**ARAUJO, Shirley**

v.

**WELCH, James S., Individually and in his official capacity as Major General, United States Army James S. Welch, Appellant.**

**No. 84–5070.**

United States Court of Appeals, Third Circuit.

Argued July 10, 1984.

Decided Sept. 7, 1984.

As Amended Oct. 10, 1984.

Charles R. Fulbruge, III, and John T. Burton, Dept. of the Army, Washington, D.C., of counsel; Richard K. Willard Acting Asst. Atty. Gen., Washington, D.C., David Dart Queen, U.S. Atty., Harrisburg, Pa., Barbara L. Herwig, Mark W. Pennak (argued), Appellate Section, Civ. Div., Dept. of Justice, Washington, D.C., on brief, for appellant.

Theodore M. Lieverman, Philadelphia, Pa., for appellee.

Before HIGGINBOTHAM and SLOVITER, Circuit Judges, and GREEN, District Judge.*

### OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Plaintiff, Shirley Araujo, a civilian Equal Employment Opportunity ("EEO") officer, brought an action against her supervisor, Major General James Welch of the United States Army. Ms. Araujo claimed that following an army sponsored EEO banquet, Major General Welch physically abused and verbally assaulted her. She filed suit in district court against Major General Welch in his official and individual capacities seeking recovery for common law assault, battery, intentional infliction of emotional distress, and constitutional tort claims. Major General Welch moved to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action upon which relief can be granted. Alternatively he moved for summary judgment under Fed.R.Civ.P. 56(b). The district court granted the motion to dismiss all but Ms. Araujo's common law tort claims of assault, battery and intentional infliction of emotional distress brought against Major General Welch in his individual capacity. On these issues, the motion for summary judgment was denied. The district court ruled that the alleged common law torts failed to fall within the outer perimeters of the defendant's official duties and was therefore not covered

---

* Honorable Clifford Scott Green, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

by the official immunity doctrine as articulated in *Barr v. Matteo,* ("*Barr*"), 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). We will reverse in part and affirm in part.[1]

## I.

Ms. Araujo and Major General Welch attended an Army sponsored EEO conference and banquet at which Major General Welch spoke. Ms. Araujo alleges that after Major General Welch spoke the two of them discussed office matters. She alleges further that during this discussion Major General Welch "repeatedly pok[ed] and shov[ed] her in the chest ... [and] used loud, vulgar, threatening, demeaning and abusive language ... which threatened her employment with the federal government." App. at 30. Although Major General Welch denies having "either struck, poked, shoved, or touched Ms. Araujo," App. at 40, for purposes of this appeal we must accept Araujo's allegations as true. *Ely v. Hall's Motor Transit Co.,* 590 F.2d 62, 66 (3d Cir.1978).

## II.

Major General Welch maintains that he was acting within the scope of his authority and therefore should be granted official immunity from liability. Major General Welch argues on appeal that under *Barr* he is entitled to absolute immunity from liability on the common law tort claims of (1) assault, (2) battery and (3) intentional infliction of emotional distress.

We now consider whether *Barr* entitled Major General Welch to absolute immunity from liability on the common law tort claims listed above. *Barr* involved a libel action brought by the Acting Director of the Office of Rent Stabilization. The Supreme Court, in a plurality decision, held that the acting director was absolutely immune from damages arising from the allegedly defamatory press release.

Speaking for the plurality, Justice Harlan reasoned that an official immunity doctrine was needed because government officials

> should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

*Barr,* 360 U.S. at 571, 79 S.Ct. at 1339. Based on this reasoning the Acting Director was shielded from prosecution. The libel claim involved actions "within the outer perimeter of [the acting director's] line of duty ...." *Barr,* 360 U.S. at 575, 79 S.Ct. at 1341.

In this case Major General Welch asserts that Ms. Araujo's claim also concerned actions within his line of duty. Thus, under *Barr,* he concludes that Ms. Araujo's suit against him should fail.

This court's reading of *Barr* required the defendant official to satisfy two prerequisites before official immunity can be granted. We articulated the appropriate inquiry in *Johnson v. Alldredge,* 488 F.2d 820, 824 (3d Cir.1973) (footnote omitted). We stated:

> First, as *Barr* makes clear, immunity protects officers from liability only for actions having a policy-making or judgmental element. This requirement has sometimes been phrased as permitting officials to enjoy immunity from liability for the exercise of "discretionary" but not "ministerial" functions. It reflects the purpose for which immunity is granted to executive, as well as judicial and legislative, officers: to ensure that important decisions are made free from the fear of personal liability or harassing suits.

---

**1.** In *Forsyth v. Kleindienst,* 599 F.2d 1203, 1208 (3d Cir.1979), we held that the denial of a motion for summary judgment on the issue of absolute immunity is appealable under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

The second requirement, also noted in *Barr*, is that the allegedly wrongful acts must have been "within the outer perimeter" of the defendant-official's duties. This requirement embodies the distinction drawn in *Spalding v. Vilas* [16 S.Ct. 631, 40 L.Ed. 780 (1896)] *supra*, "between action ... in reference to matters which are manifestly or palpably beyond [the officer's] authority, and action having more or less connection with the general matters committed by law to his control or supervision." A clearer manner of stating this requirement, borrowing language from the law of agency, might be that, for immunity purposes, the defendant-official's authority includes any action that he reasonably believed authorized.

Major General Welch has satisfied the first prerequisite requiring that the alleged tort be committed while performing a discretionary act. As commanding officer of U.S. Army Depot Systems Command, Major General Welch's responsibilities included supervision of the Equal Employment Opportunity office where plaintiff was employed. On the evening in which the alleged incident occurred, Major General Welch and Ms. Araujo were both attending an Army sponsored EEO conference and banquet. Major General Welch gave a speech in his official capacity at the banquet. After that speech Major General Welch and Ms. Araujo agree that they discussed work-related matters. Participating in such a discussion at an army sponsored EEO conference is certainly within Major General Welch's discretionary powers. There is no allegation or evidence that Major General Welch's discussion with Ms. Araujo was a ministerial function. As a consequence we hold that Major General Welch satisfies the first prerequisite that he be functioning in a discretionary capacity at the time of the alleged incident.

The second prerequisite mandates that the alleged tortious acts occur within the perimeter of the defendant's official duties. Major General Welch contends that because the alleged acts occurred during the course of his official duties he is entitled to official immunity.

We will not read *Barr* to extend as far as Major General Welch requests. In determining the extent of *Barr's* reach we find comfort in the "functional approach" applied by the D.C. Circuit Court of Appeals. This approach requires that the grant of immunity advance some legitimate purpose of the office in question.

When it first considered this question, the D.C. court framed the inquiry as follows:

[I]n determining whether a particular government function falls within the scope of official immunity .... [t]he proper approach is to consider the precise function at issue, and to determine whether an officer is likely to be unduly inhibited in the performance of that function by the threat of liability for tortious conduct.

*Carter v. Carlson*, 447 F.2d 358, 362 (D.C. Cir.1971), *rev'd on other grounds sub. nom. District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) (footnote omitted). *See also, Bishop v. Tice*, 622 F.2d 349 (8th Cir.1980).

The Court of Appeals for the District of Columbia Circuit considered this question most recently in *McKinney v. Whitfield*, 736 F.2d 766 (D.C.Cir.1984). In *McKinney* a budget analyst for the Federal Aviation Administration ("FAA") brought a civil damages suit for assault and battery against a supervisor. The alleged torts were committed during a dispute concerning the possible lay-off of the budget analyst. Thus, the district court ruled that the torts occurred within the "outer perimeter" of the supervisor's authority. Accordingly, it held that plaintiff's claim could not stand. The court of appeals reversed. The court applied the "functional approach" stating:

We hold that separation of supervisory goals from supervisory means is required in the setting presented here; we do not believe that drawing the distinction, when superior-subordinate desk em-

ployee relations are at stake involves, untoward "difficulty".

*Id.* at 770. Recognizing that the FAA supervisor had "available numerous means, short of physical coercion, for compelling the obedience of recalcitrant subordinates," *id.* at 771, the court concluded that the supervisor's duties "stopp[ed] short of the physical coercion of subordinate managerial employees." *Id.* at 769. It declared:

[We] hold that federal bureaucrats exceed the outer perimeters of their responsibilities, and act manifestly beyond their line of duty, when they resort to physical force to compel the obedience of their managerial subordinates.

*Id.* at 771–72.

We find the "functional approach" employed by the D.C. Court of Appeals an appropriate way to resolve this dispute. In this case, Major General Welch and Ms. Araujo were discussing work-related matters when the alleged torts of assault, battery and intentional infliction of emotional distress occurred. Concerning the alleged assault and intentional infliction of emotional distress, we conclude that government officials such as Major General Welch, must be able to speak freely to their employees without "apprehension that the motives that control his official conduct may, at any time, become the subject of inquiry in a civil suit for damages." *Spaulding v. Vilas*, 161 U.S. 483, 498, 16 S.Ct. 631, 40 L.Ed. 780 (1896). Oral communication about work-related matters advances legitimate objectives of the office. Thus, we believe that the district court erred in finding that Ms. Araujo could maintain an action on her claims of verbal abuse and intentional infliction of emotional distress.

Regarding Ms. Araujo's claims of physical abuse, we believe that the district court did not err in ruling against Major General Welch's official immunity defense. Physical abuse in a situation as that presented here is unnecessary and unwarranted. This is simply not a situation involving security or law enforcement officials where, as an example, in making an arrest or enforcing an injunction, possible physical contact is reasonably forseeable and sometimes necessary "to aid in the effective functioning of government." *Barr*, 360 U.S. at 573, 79 S.Ct. at 1340. *See Norton v. McShane*, 332 F.2d 855 (5th Cir.1964), *cert. denied*, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965) (federal law officials immune from assault and battery charges); *Skolnick v. Campbell*, 398 F.2d 23 (7th Cir.1968) (deputy court marshal charged with assault and battery acted within the limits of his duty and held immune from liability); *Hartline v. Clary*, 141 F.Supp. 151 (E.D.S.C.1956) (IRS agents accused of physical abuse and assault during an arrest entitled to immunity).

In this case we can glean no evidence justifying the alleged use of force. Nor can we imagine what legitimate purpose is served by allowing a Major General of the United States Army to physically abuse a civilian employee during a conversation about past work performance. Under the legal rationale articulated by the government, there seems to be no limit to the physical abuse that an officer can impose on a civilian provided it falls short of homicide or rape.[2]

Because we can imagine no justification for the alleged battery committed here, we conclude that Major General Welch acted beyond the "outer perimeter" of his duty. We therefore will affirm the district court's order allowing Ms. Araujo to proceed on the battery claim, but will reverse and grant official immunity on the claim of assault and intentional infliction of emotional distress.

---

2. At oral argument, the following transpired:

COURT: You're saying, absolute immunity exists while you're performing an official function if you hit, you beat, you injure, you maim, you mutilate, so long as you're per-

forming an official function, that is your rationale, is it not?

GOVERNMENT: That is the logic of our rationale.