John M. ANDREJKO and Susan Irene Andrejko, his wife, Plaintiffs,

v.

Raymond L. SANDERS, Defendant.

Civ. No. 85–1086.

United States District Court, M.D. Pennsylvania.

Jan. 24, 1986.

Peter G. Loftus, Scranton, Pa., for plaintiffs.

James W. Walker, U.S. Attorney's Office, Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

We consider here several motions which have been filed in the above-captioned case. These are: Plaintiff's motions that this case be remanded to the Lackawanna County Court of Common Pleas [1] and that a protective order be issued to prohibit the Internal Revenue Service from destroying any parts of Plaintiff's personnel file; and Defendant's motion for dismissal or, in the alternative, summary judgment.[2] We note that the parties have properly briefed these motions and we shall now consider them sequentially.

---

1. It was originally filed there on July 12, 1985.

2. We shall treat said motion as one for summary judgment because Defendant has incorporated affidavits into its pleadings herein. See

## BACKGROUND:

In the face of a case dispositive motion we must accept the veracity of the pleadings by the non-moving party. See *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); also, *Leone v. Aetna Casualty and Surety Co.*, 599 F.2d 566 (3d Cir.1979). Thus, we shall here rely on the Plaintiff's version of the facts. To wit: Plaintiff Andrejko worked for the Internal Revenue Service and was under the supervision of his Group Manager, Raymond J. Sanders; Plaintiff Andrejko worked for the IRS for eleven years before becoming Sanders' subordinate; From September of 1981 until June 13, 1983 Sanders was Andrejko's immediate supervisor; During this time period Sanders "... continuously and unrelentingly and intentionally hounded, harassed, intimidated, badgered, threatened and criticized the Plaintiff when he knew, or should have known, that the Plaintiff had personal problems of a severe nature which caused him to be depressed and required medication." [3] As a consequence of Sanders' treatment of Plaintiff Andrejko, the Plaintiff attempted suicide by ingesting an overdose of medication and is now emotionally disabled. He needs and will continue to need medical and psychiatric care, can no longer work, and his wife has suffered the loss of his society.

## PLAINTIFF'S MOTION TO REMAND

As has previously been mentioned, this case originated in the Lackawanna County Court of Common Pleas and was removed to this Court on the government's theory that, even if Defendant Sanders did the things he is alleged to have done in Plaintiff's complaint, he did them while acting in his official capacity as a supervisory employee of the Internal Revenue Service and, as a consequence, this claim should be

---

Rules 12(b)(6) and 56(e) of the Federal Rules of Civil Procedure.

3. See Complaint at paragraph 7.

reconstrued as though brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346. The United States is the only proper defendant in such a suit and the United States may not be sued in any state court as federal courts are vested with exclusive jurisdiction over tort claims against the United States. See 28 U.S.C. § 1346(b).

The Plaintiff seeks remand to the Lackawanna County Court of Common Pleas on the theory that:

> This is a complaint against an individual for injuries which he maliciously and intentionally perpetrated upon the Plaintiffs knowing full well the physical and mental condition of the Plaintiff and the result which his actions would achieve. It is not an action against the United States. The Defendant has attempted to superimpose the United States in his position alleging that these injuries were performed in the line of duty and in Defendant's official capacity. This is blatantly not correct. Nowhere in the Complaint is it alleged that Sanders, during the period of the conduct alleged, was doing so in his official capacity. True, his position with the Internal Revenue Service is stated; however, his course of conduct is not alleged to be as an agent, servant and/or employee of the United States but rather as one individual against another. See Docket Item 14 at page 2.

In response to Plaintiff's averment that this case belongs in state court due to its "individual against individual" character, Defendant cites *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969), for the proposition that the right of removal under 28 U.S.C. § 1442(a)(1) is made absolute whenever a suit in a state court is for any act "under color" of federal office. The Supreme Court in *Willingham* agreed with the government's argument that "... the removal statute is an incident of federal supremacy, and that one

of its purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties." *Willingham*, supra at 405, 89 S.Ct. at 1815. Defendant also notes that "... the Court in *Willingham* observed that the Congress, 'has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)'."[4]

■ Our reading of *Willingham* persuades this Court that the government's insistence on a federal forum here is well-founded.

The applicable statute[5] does state:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.

The removal petition represents that the misconduct attributed to the Defendant occurred during his supervisor/subordinate relationship with Plaintiff Andrejko and Defendant has provided a sworn affidavit to that effect.[6] Significantly, Plaintiff has provided a counter-affidavit which actually functions to corroborate Defendant Sanders' statement that his only association with Plaintiff was work-related.

We find that, given the broad parameters of appropriate removal pursuant to the explicit language of 28 U.S.C. § 1442(a)(1) and the very expansive Supreme Court construction of this statute's reach in *Willing-*

---

4. See Docket Item 7 at page 3.

5. 28 U.S.C. § 1442(a)(1).

6. See Affidavit of Raymond L. Sanders which is attached to Docket Item 7.

*ham,* Plaintiff's characterization of this dispute as "individual against individual" is quite unpersuasive. Clearly, there is a valid federal interest here. One can easily imagine the disruption that might occur in federal workplaces if federal employees were allowed to lodge and maintain state tort claims against any superior with whom they had an axe to grind. The resultant wave of litigation might well impair the ability of the various federal agencies to function efficiently. Consequently, we shall retain jurisdiction of this case and reconstrue it as though it had been brought under the Federal Tort Claims Act, 28 U.S.C. § 1346, the statute which allows suits against the Federal Government for torts committed by its employees while in the scope of their employment.

## DEFENDANT'S SUMMARY JUDGMENT MOTION

■ Having decided that this case is properly before this Court and should be considered as having been brought against the United States and pursuant to the Federal Tort Claims Act (hereinafter the FTCA), we must now determine whether some cognizable claim has been stated thereunder. Defendant argues that the United States is: (a) absolutely immune from liability in a situation where a federal official has committed tortious acts in the performance of his official duties; and (b) qualifiedly immune from liability in a situation where a federal official is alleged to have caused damages in the course of conduct which he/she reasonably believed to be lawful. We think given the facts as

alleged by Plaintiff, the Defendant must prevail on either of these theories.[7]

The FTCA holds the United States responsible "... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*" (Emphasis ours). Thus, it would seem that we must consider whether the conduct alleged to have been exhibited by Raymond L. Sanders would constitute tortious behavior in the State of Pennsylvania.[8] However, case law has carved out an exception wherein even those federal officials who commit common-law torts are immune from liability where the acts they committed fall within the outer perimeter of said officials' line of duty.

In the recent case of *Araujo v. Welch,* 742 F.2d 802 (3d Cir.1984), it was found that

... government officials ... must be able to speak freely to their employees without 'apprehension that the motives that control his official conduct may, at any time, become the subject of inquiry in a civil suit for damages.' *Spaulding v. Vilas,* 161 U.S. 483 [16 S.Ct. 631, 40 L.Ed. 780] (1896). Oral communication about work related matters advances legitimate objectives of the office. Thus, we believe that the district court erred in finding that Ms. Araujo could maintain

---

**7.** Plaintiff's brief in opposition to Defendant's summary judgment motion does not address either of Defendant's arguments. Rather, it asserts that if this Court enjoys jurisdiction over this claim it is pursuant to the Federal Employees ·Compensation Act. Beyond the fact that this assertion is unresponsive to Defendant's arguments and simply incorrect, we note that there is no evidence in the record that Plaintiff ever filed an administrative claim as mandated by 5 U.S.C. § 8121, a subsection of the FECA.

**8.** We note at this point that, granting truth to the allegations that Supervisor Sanders "hounded, badgered, intimidated and criticized" Subor-

dinate Andrejko on the job site, we have grave misgivings as to whether Pennsylvania law would view this as tortious conduct. Supervisors in a workplace are charged with responsibility to make those under their control productive and must use discretion to decide how best to obtain reasonable productivity from each employee. If a decision is made incident to such discretion that a given employee must be coerced into productivity, this may be harsh, yet, it may also be legitimate. Short of assaultive behavior, we believe a supervisor may "badger" employees to achieve legitimate ends.

an action on her claims of verbal abuse and intentional infliction of emotional distress. *Araujo*, supra at 806.

■ Plaintiff Andrejko's claims—regardless of their packaging as nuisance, intentional interference with a business relationship etc.—erroneously state that *mere* verbal abuse by his supervisor which was visited upon him while in the course of his employment[9] constitutes actionable behavior by Defendant Sanders and, hence, the United States. *Araujo* clearly indicates that this is not so. We note, too, as did the *Araujo* Court, that where an official performs a discretionary act within the perimeter of his official duties he is entitled to absolute immunity against claims of intentional infliction of emotional distress. See also *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). The *Araujo* Court also gave deference to the logic expressed by the United States Court of Appeals for the District of Columbia in *Carter v. Carlson*, 447 F.2d 358, 362 (1971). That court, in analyzing when immunity should be granted to a federal official who has allegedly committed tortious acts, stated:

> In determining whether a particular government function falls within the scope of official immunity ... the proper approach is to consider the precise function at issue, and to determine *whether an officer is likely to be unduly inhibited in the performance of that function* by the threat of liability for tortious conduct. (Emphasis ours).

We now conclude, taking as true Plaintiff's allegations and the affidavits of the parties to the extent that they are consistent, that a federal official engaged in supervisory work similar to that performed by Defendant Sanders would be "unduly inhibited" in the performance of his duties if not granted immunity against claims like those posed in the instant case.

■ Even more significantly, we find that as the interpretation of *Barr*, supra, provided in *Johnson v. Alldredge*, 488 F.2d 820, 824 (3d Cir.1973) mandates, the actions of the Defendant in this case were: (1) committed in the exercise of a discretionary function; and (2) were performed "within the outer perimeter" of Defendant Sanders' duties. We find, too, that absent physical abuse—which is simply not a feature of this case—a federal employee may not maintain a suit against a superior who has exercised the considerable discretion he enjoys to determine what mode of communication will best motivate an employee to reach the production levels set by an agency. See *Araujo*, supra. An *Order* consistent with these findings is attached hereto.

---

9. We note that Defendant Sanders' sworn affidavit to the effect that his only contact with Plaintiff Andrejko was incident to their supervisor/subordinate relationship and pursuant to Sanders' responsibility to perform his own tasks, as delineated in an IRS manual of job descriptions, is not clearly contradicted by Plaintiff's counter-affidavit and is, in some respects, corroborated by it. See Docket Items 8 and 16.